Stuart H. V. Carlson v. Commissioner.
Stuart H. Carlson v. Commissioner
Docket No. 36012.
United States Tax Court
1953 Tax Ct. Memo LEXIS 232; 12 T.C.M. (CCH) 601; T.C.M. (RIA) 53193; May 29, 1953
*232 Stuart H. V. Carlson, pro se. Joseph Landis, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and additions for fraud under section 293(b) as follows: 293(b)
Year
Deficiency
Additions
1942
$1,629.66
$ 814.83
1943
3,493.69
1,746.85
1944
2,245.28
1,122.64
1945
2,605.30
1,302.65 The only real issue for decision is whether a part of each deficiency is due to fraud with intent to evade tax. Findings of Fact The petitioner filed individual returns for the taxable years with the collector of internal revenue for the District of Connecticut. He operated a trucking business during those years under the name of Stuart H. V. Carlson, d.b.a. Carlson & Co. Books for that business were kept on an accrual basis. The Commissioner, in determining the deficiencies, held that the petitioner "failed to report interest received in the calendar years 1942, 1943 and 1944 in the amounts of $62.48, $146.00 and $192.63, respectively, failed to report dividends received in the calendar years 1943 and 1944 in the amounts of $373.00 and $128.00, respectively, and understated 'dividends *233 and interest' received in the calendar year 1945 by $96.13 * * *", "your income from Carlson and Company, a sole proprietorship, has been understated in the calendar years 1942, 1943, 1944 and 1945 in the amounts of $2,465.45, $1,505.46, $956.71 and $2,528.34, respectively, by failing to report receipts and by taking fictitious deductions * * *", and "you understated your income in the amounts of $2,279.18 and $1,184.18 in the calendar years 1943 and 1945, respectively, which amounts represent unidentified bank deposits." He also made the following additional adjustments: 1942
(b) Repairs
$ 100.10
(c) Depreciation
239.00
(d) Capital gain
701.15
(f) Expenses of travel, etc.
1,315.06
His explanation for (f) was: "(f) The deduction of $1,230.06 for travel, entertainment and sales expenses has been eliminated in computing your taxable net income, since sufficient information has not been submitted to establish the deductibility of the amount. The deduction of $85.00, representing the cost of heater for personal use, has also been eliminated in computing your taxable net income. The adjustment to net income is $1,315.06." 1943
(c) Personal expenses
$ 68.77
(d) Capital expenditures
450.37
(e) Travel and entertainment
1,348.04
(h) Capital loss
187.25
*234 His explanations were for (c) that the cost of repairs to a boat is a personal expense, for (d) the cost of unit heaters and linoleum represents capital expenditures recoverable through depreciation, for (e) the information submitted does not establish the deductibility of the item, and for (h) the net capital loss on sale of securities was overstated in the amount of $187.25. 1944
(c) Capital gain
$ 233.11
(d) Capital loss
1,000.00
(f) Travel and entertainment
2,182.50
(g) Capital expenditures
425.60
(h) Insurance
109.00
(i) Interest expense
75.00 His explanations were for (c) that a capital gain of $233.11 on sale of securities was not reported, for (d) the capital loss of $1,000 resulted from stock transactions in 1945 and is not an allowable deduction for 1944, for (f) the deduction for travel and entertainment was disallowed in the amount of $2,182.50 for lack of information, for (g) the cost of light fixtures and a welder represents capital expenditures recoverable through depreciation, for (h) insurance paid on a boat and jewelry represents personal expense, and for (i) the adjustment eliminates duplicate deduction for mortgage interest. 1945
(d) Capital expenditures
$ 781.46
(e) Contributions
264.30
(f) Interest paid
50.00
(g) Travel and entertainment
1,987.50
*235 His explanations were for (d) that the cost of assets represented capital expenditures recoverable through depreciation, for (e) the deductions for contributions were eliminated because the petitioner elected to use the standard deduction of $500.00 in lieu of itemized deductions, for (f) it eliminated a duplicate deduction for mortgage interest, and for (g) the deduction for travel, entertainment and sales expense was disallowed for lack of sufficient information. The following table shows the amounts deducted on the returns for travel and entertainment expense and the portions thereof allowed and disallowed by the Commissioner in determining the deficiencies: Year
Claimed
Allowed
Disallowed
1942
$1,605.64
$ 290.58
$1,315.06
1943
2,393.75
1,045.71
1,348.04
1944
4,105.00
1,922.50
2,182.50
1945
3,975.00
1,987.50
1,987.50 The travel and entertainment expenses incurred were not shown to have exceeded the amounts allowed by the Commissioner for each year. A certified public accountant prepared the petitioner's returns from the books of Carlson & Co. and such additional information as was furnished him by the petitioner. Deductions were claimed *236 on the petitioner's returns for each year and allowed for the full amounts of customers' claims for cargo loss and damage accrued on the books of Carlson & Co. The following amounts were received by the petitioner from insurance companies in reimbursement for cargo loss and damage for which deductions had been claimed: Year
Amount
1942
$1,208.06
1943
208.46
1944
56.71
A deduction was claimed on the petitioner's return for 1945 and allowed for the expense of repairing trucks damaged in collision. The petitioner was reimbursed $406.15 by an insurance company in 1945 for a collision loss. The insurance reimbursements mentioned above were not reflected on the books of Carlson & Co. or on the petitioner's returns for the taxable years and were not called to the attention of the accountant preparing his returns for those years. The petitioner and P. Wajer & Sons Express Company jointly leased terminal facilities in Boston during the four taxable years. Part of the space was sublet and Wajer collected the rent from the subtenants and paid the landlord and the expenses, except telephone. The net difference between rents collected and rents and expenses paid by *237 Wajer were to be shared equally by Wajer and the petitioner in adjustments to be made about twice each year. The rents collected in each of the taxable years equalled the rents and expenses paid and actually the petitioner paid no rent during the taxable years for the terminal facilities in Boston. The petitioner accrued on the books of Carlson & Co. $75 per month during the four taxable years as rent for those facilities and claimed deductions of $900 each year for rent of those facilities. The petitioner appeared at the Wajer office in July 1942 with a check of Carlson & Co. dated July 9, 1942 for $545.39 made payable to Wajer which he said was for his share of the terminal expenses. Wajer advised him that he owed nothing. He again appeared at the Wajer office in 1943 with a similar check dated September 28, 1943 for $1,050 which he said was for his share of the terminal rent and expense and again was told that he owed nothing. The latter check had typed on it "Terminal Rent paid to the Boston Wharf." Those two checks were shown on the books of Carlson & Co. for 1942 and 1943 as payments for terminal rent and expense and no reversing entries were made on those books during the *238 taxable years. The petitioner on each occasion had the check endorsed by Wajer and then retained the funds for himself. He never advised the accountant preparing his returns for the taxable years that the proceeds of the checks did not go to Wajer, that the rent accrued on the books of Carlson & Co. and deducted on the returns would not have to be paid, or that there was income from subleasing portions of the Boston terminal. The telephone at the Boston terminal was listed in the name of Carlson & Co. The charges for the telephone were paid by Carlson & Co. Wajer reimbursed Carlson & Co. for calls which it made on the telephone. Wajer paid Carlson & Co. $187 for such calls in 1942 but the Carlson & Co. books did not reflect that payment and the accountant preparing the petitioner's return for 1942 was not told of it. A deduction for telephone expense was claimed on the petitioner's return for 1942 which deduction included the entire charges on the Boston terminal telephone without reduction for the reimbursement of $187 received from Wajer. The petitioner was the principal stockholder of Sunset Inn, Incorporated. He instructed the accountant in 1944 to bring the affairs of that *239 corporation to a close and liquidate it. The accountant instructed the petitioner to have his lawyer file the necessary papers with the Secretary of State of Connecticut to dissolve the corporation and the lawyer may have filed such papers in 1944. The record does not show error in any adjustment made by the Commissioner in determining the deficiencies. A part of the deficiency for each of the taxable years is due to fraud with intent to evade tax. Opinion MURDOCK, Judge: The petitioner did not introduce any evidence whatsoever with respect to most of the adjustments made by the Commissioner and as to none of those adjustments did he introduce evidence sufficient to show that the determination of the Commissioner was in error. He said, in his opening statement to the Court at the trial, that he believed the fraud issue was the main issue to be decided. He filed no brief. The deficiencies determined by the Commissioner for each year must be sustained because of the failure of proof to show that there was any error in those determinations. The Commissioner has the burden of proof to show that a part of each deficiency was due to fraud with intent to evade tax. He relies principally *240 upon evidence relating to rent and telephone expenses of the Boston terminal and upon reimbursements through insurance to sustain his burden of proof. The evidence shows that $900 was accrued in each year on the books of Carlson & Co. to represent a liability for rent on the Boston terminal. The accountant, who prepared the returns of the petitioner for the taxable years, claimed annual deductions of $900 for rent based upon those book entries. He was never told that the rent was not being paid. No rent was ever paid by Carlson & Co. or the petitioner for the Boston terminal during the taxable years. Instead, income from subleasing portions of those premises was more than sufficient to pay the rent. The petitioner knew this but continued to claim the deductions for rent on his return without reporting his share of the income from the subleasing. Furthermore, he engaged in acts calculated to show on his books and records that rent was actually paid. He had checks made out to Wajer for rent, took those checks to Wajer, learned that no amount was owed, had Wajer endorse the checks and then retained the money for his own use without showing on the books of Carlson & Co. that the checks *241 had not been used to pay Wajer. Likewise, he claimed deductions on his returns for which he was compensated by insurance and used the proceeds of the insurance for his own purposes without showing the receipt of the checks on the books of Carlson & Co. The reimbursement for the telephone is another straw. This evidence, taken as a whole, is sufficient to show that a part of each deficiency is due to fraud with intent to evade tax. The petitioner, about a month after the hearing was concluded, filed a motion for a further hearing in order to call three revenue agents as witnesses, for purposes not set out in the motion, to take the stand himself to show that all of the income received by him for the taxable years was reported and the tax thereon paid, and to introduce the testimony of an attorney to show that Sunset Inn, Incorporated, was dissolved in 1944 and that the stock became worthless in that year. That motion was denied for a number of reasons, one of which was that all of the proposed testimony was available at the time of the hearing and no reason for not presenting it at that time was shown, another was that the nature and purpose of the testimony of the three revenue agents *242 was not indicated in the motion or in any way made apparent to the Court, another was that the petitioner at the trial did not choose to testify in his own behalf and was reluctant to testify when called as a witness by the respondent, and another was that the dissolution of Sunset Inn in 1944 would not show that the stock became worthless in that year rather than in 1945, as determined by the Commissioner, and the nature of any other testimony of the attorney to show that the stock became worthless in 1944 was not described in the motion so the Court had no reason to believe that it would be effective if produced. Decision will be entered for the respondent.